HALL, Justice.
The Louisiana State Bar Association, through the Committee on Professional Responsibility, filed a petition for disciplinary action against respondent, I. David Warner. The petition alleged that respondent *15 was guilty of misconduct for the following reasons:
“That in your capacity as attorney at law, you held yourself out to Cleo Pellet-eri, the seller of a certain piece of real estate, as the attorney representing a group of doctors as potential buyers of the property, when in fact, you did not represent a ‘group of doctors’, but instead, you were retained by Nelson Cha-telain and Wayne M. Babovich. That, you along with Wayne M. Babovich and Nelson Chatelain, participated in a scheme in order to exert pressure on Ms. Pelleteri, and to coerce her into selling this property. That, this conduct involved dishonesty, fraud, deceit and misrepresentation, all in violation of Disciplinary Rule 1-102(A)(1), (4) and (6) of the Code of Professional Responsibility of the Louisiana State Bar Association.”
Committee hearings were held on June 27, 1988 and September 29, 1988, and a commissioner’s hearing was held on February 8, 1990, pursuant to these allegations. The committee hearings resulted in a recommendation by a majority of the Committee on Professional Responsibility that respondent be disciplined for the conduct specified by the Bar Association. However, the commissioner recommended that no discipline be imposed. Respondent filed a motion to confirm the report of the commissioner and to dismiss the proceeding. Petitioner opposed the motion and urged this court to impose discipline after a review of the record.
FACTS
In Louisiana State Bar Association v. Babovich, 515 So.2d 1070 (La.1987), we reviewed a complaint against Wayne Babo-vich, pursuant to the same transaction complained of in this instance. We found that Babovich, then a New Orleans city councilman, and Nelson Chatelain, a real estate developer, planned to acquire title to a 3.5 acre tract of land partially owned by Cleo Pelleteri. The two planned to resell the land after its purchase and split the profit.
The 3.5 acre tract was located adjacent to a 26V2 acre tract, also owned by Pelleteri, which was being considered for rezoning by the New Orleans city council. Both tracts were located in Babovich’s district. Pelleteri had entered into an option to purchase agreement with Medicore Development Corporation, conditioned upon the land being zoned commercial.
In August of 1982, Babovich and Chate-lain contacted Warner about drawing up an option to purchase the 3.5 acre tract of land. Warner was instructed not to reveal that Babovich and Chatelain were the potential purchasers, but instead, he was to submit that he represented a “group of doctors and a developer” who wished to remain anonymous. In September of 1982, Babovich arranged a meeting between Pel-leteri and Warner at the Plimsoll Club in New Orleans. At the meeting, the three discussed the pending zoning application and the sale of the 3.5 acre tract of land. As planned, Warner informed Pelleteri that he represented undisclosed doctors and a developer. According to Warner’s testimony before the committee and a grand jury, the purpose of Warner’s presence at the Plimsoll Club as a friend of Babovich was to apply indirect subtle pressure on Ms. Pelleteri. Ms. Pelleteri stated that she left the meeting feeling that an attempt was made to pressure her to grant the option on the 3.5 acre tract.
About a month after the meeting, Warner went to Ms. Pelleteri’s house and presented her with an option to purchase the property for $6.00 per square foot, and a $1,000 check drawn by Blue Ridge, Inc., a corporation principally owned by Chatelain. The option and check were refused.
Warner phoned Pelleteri about a week before the hearing on the zoning proposal for the 26½ acre tract and discussed the option on the three and one-half acre tract. Pelleteri testified that Warner told her that if the option was granted the zoning application would “sail through.” Warner denies making such a statement, contending he constantly assured Ms. Pelleteri that the two transactions were not connected.
Reacting to this telephone conversation, Ms. Pelleteri visited Babovich, who assured Ms. Pelleteri that the option on the three *16 and one-half acre tract and the zoning approval were unrelated. The zoning application received approval not long after this conversation.
Warner contends he again presented the option after the approval of the zoning. Ms. Pelleteri denies that she was contacted by Warner after the approval of the zoning.
CHARGED OFFENSE
The Bar Association charged Warner with violation of Disciplinary Rules 1-102(A)(1), (4) and (6) of the Code of Professional Responsibility, which provide:
“DR 1-102. MISCONDUCT (A) A lawyer shall not:
(1) Violate a disciplinary rule.
(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.”
In short, the Bar Association alleged that Warner misrepresented that he was counsel for a group of doctors, when in fact he represented Babovich and Chatelain, and that he participated in a scheme to. pressure Ms. Pelleteri into selling the 3.5 acre tract of land.
Even though Warner did not devise the scheme or have the power to exert pressure on Ms. Pelleteri, he knew Babovich and Chatelain intended to use Babovich’s power on the city council as a catalyst to “encourage” Ms. Pelleteri to sell the property. Babovich could not reveal that he wanted to buy the 3.5 acre tract and also subtly connect the zoning to that transaction. He needed a friend to pose as a potential buyer to give the scheme more of a “you scratch my back” flavor. There can be no doubt that Warner knew Babovich’s intentions. At a grand jury proceeding, Warner testified that the purpose behind his meeting with Pelleteri was to subtly and indirectly pressure her. He stated that he knew it was wrong, but went through with it anyhow.
Whether Warner actually connected the zoning application to the option to sell the 3.5 acre tract by telling Ms. Pelleteri the zoning would “sail through” is unimportant. What is important is he knew of Babovich and Chatelain’s intention to carry out the scheme, and he voluntarily aided and abetted this scheme. This action was sufficient to constitute a violation of DR-1-102(A)(4).
MITIGATING AND AGGRAVATING FACTORS
The primary mitigating factor in this case is that the misconduct did not lead to actual injury. Ms. Pelleteri was astute enough to consult an attorney regarding the transactions, and was not pressured into granting the option on the 3.5 acre tract. The zoning application was approved, and the sale of the 26½ acre tract was completed. However, the potential for harm existed until the zoning was approved.
Also, Mr. Warner has no prior disciplinary complaints against him. His record before and after this transaction is unmarred, and this one incident seems to be an aberration from his normal course of business.
It should be noted that Babovich, also an attorney, was disciplined by this court based upon a federal criminal conviction arising out of this transaction. Mr. Babo-vich’s suspension was based solely on the fact that he had been convicted of a federal crime which we found to be a serious offense. Subsequent to the conviction, and after serving the suspension and being reinstated, Babovich’s conviction was overturned. On his petition, we vacated the suspension without prejudice to the institution or continuation of disciplinary proceedings not based on the criminal conviction. Louisiana State Bar Association v. Babovich, 569 So.2d 946 (La.1990). The vacating of Babovich’s suspension does not mitigate in favor of Warner because the action of this court in that regard was not based on a consideration of the conduct underlying the reversed criminal conviction.
*17 Most difficult in this case is the decision regarding the appropriate discipline to impose upon Mr. Warner. It is troubling that Mr. Warner, an attorney with considerable experience, would voluntarily and consciously agree to aid a scheme he knew to be wrong. Fortunately, the scheme did not work and no damage resulted. The Bar Association never contended that Warner’s conduct was criminal, nor was he ever criminally charged. Mr. Warner admits with hindsight that his conduct was inappropriate and his judgment in agreeing to participate in the scheme flawed.
Mindful that the purpose of disciplinary action is to protect the courts and the public, we feel that the appropriate discipline is a public reprimand, which is hereby imposed. Considering all of the factors in this case and the extensive publicity surrounding the transaction, we feel that no greater punishment is necessary to accomplish this purpose. All costs of the proceedings shall be paid by respondent, I. David Warner.
LEMMON, J., dissents in part and assigns reasons.
DENNIS, J., concurs in part and dissents in part for the reasons assigned by LEMMON, J.