669 So.2d 1204 (1996)
In re Roger C. SELLERS.
No. 95-B-2764.
Supreme Court of Louisiana.
March 15, 1996.
*1205 Charles Plattsmier, Baton Rouge, G. Fred Ours, Gregory F. Gambel, New Orleans, for Applicant.
Roger C. Sellers, Paul J. Hebert, Abbeville, for Respondent.

DISCIPLINARY PROCEEDINGS
PER CURIAM.
Respondent, Roger C. Sellers, was formally charged with one count of engaging in conduct contrary to the Rules of Professional Conduct for allegedly failing to disclose a material fact to a third person when disclosure was necessary to avoid assisting in a criminal or fraudulent act.
The formal charges at issue arise out of two real estate transactions that occurred in the summer of 1989. The Respondent served as the notary for both transactions. The first transaction involved a collateral mortgage executed on July 26, 1989. This document was prepared and notarized by Respondent on behalf of Alice Wood who mortgaged her one-third (1/3) interest in certain property in Jefferson Davis Parish to Roger and Helen LeBlanc, for $24,368.46. Pursuant to Respondent's correspondence with the Jefferson Davis Parish Clerk of Court's Office, this collateral mortgage was recorded on July 31, 1989.
The second transaction involved the sale of the same property. Days after execution of the collateral mortgage, Ms. Wood requested that Respondent contact her nephew, the complainant, Alfred Maund, Jr., in New Orleans to inquire whether he wished to purchase the property that had been mortgaged. Pursuant to Ms. Wood's instructions, Respondent did not mention the existence of the collateral mortgage during the telephone conversation. After this telephone conversation, Mr. Maund and Ms. Wood undertook negotiations for Mr. Maund to purchase the property, and upon reaching a satisfactory agreement, Mr. Maund hired a New Orleans attorney to prepare the necessary documents.
Less than one month later, on August 24, 1989, Mr. Maund brought the documents to his Aunt's home in Kaplan, Louisiana, for execution. At this closing, the Respondent again served as a notary at the request of Ms. Wood and/or the New Orleans attorney. The LeBlancs (mortgagees in the first transaction) also served as witnesses to the execution of this document. However, no one disclosed to Mr. Maund that there was a mortgage on the property. Further, the Act of Sale contained boilerplate language to the effect that the seller warranted to the purchaser that the property being transferred was free and clear of all liens and encumbrances, as well as language to the effect that the Notary was in possession of mortgage certificates that reflected that the property was free and clear.
In his written response to the formal charges, Respondent admitted that he did not disclose the existence of the collateral mortgage to Mr. Maund pursuant to his client's instructions. Respondent explained as follows, "she told me not to mention the Mortgage because she wanted to fully protect Roger and Barbara LeBlanc and she did not want me to mention the Mortgage to anyone." Mr. Maund did not become aware of the mortgage until approximately five years later, following the death of Ms. Wood, when demand for payment of the mortgage was made upon Mr. Maund by Respondent on behalf of the LeBlancs.
Upon its initial investigation, Disciplinary Counsel closed this complaint. After complainant appealed, closure was affirmed by the Hearing Committee. Complainant then appealed to the Disciplinary Board. On December 2, 1994, a Disciplinary Board Panel ordered the filing of the instant formal *1206 charges, which were filed on December 15, 1994.
After a formal hearing, the Hearing Committee recommended that the charges be dismissed as unproven. The Disciplinary Board disagreed, and recommended that Respondent be suspended for one year.
Rule 4.1(b) of the Rules of Professional Conduct provides:
In the course of representing a client a lawyer shall not knowingly:
(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.
Since the Respondent prepared, notarized, and mailed the original collateral mortgage to the Jefferson Davis Parish Clerk of Court's Office for filing, he had personal knowledge of its existence and should have disclosed it at the closing. Because the mortgage was filed in the public record, the disclosure of its existence could not be a confidential communication, and was not prohibited by Rule 1.6.
Upon review of the Hearing Committee and Disciplinary Board findings and recommendations, and considering the transcript, record, briefs, oral argument, Respondent's lack of prior disciplinary proceedings, and the fact that Respondent did not receive any monetary benefit from this transaction, it is the decision of this Court that Respondent violated Rule 4.1(b) of the Rules of Professional Conduct and should receive a reprimand in accordance with Supreme Court Rule 19, § 10(A)(4)[1].
Accordingly, it is ordered that Roger C. Sellers be reprimanded in accordance with Supreme Court Rule 19, § 10(A)(4).
REPRIMAND ORDERED.
LEMMON, J., dissents and assigns reasons.
JOHNSON, J., dissents and would suspend for one year.
LEMMON, Justice, dissenting.
The majority constructs a "house of cards" based on the undisputed, but relatively unimportant, fact that respondent knew of the mortgage on July 26, 1989. Although respondent took no part in the negotiations during the following four weeks between Mrs. Wood and her nephew regarding the sale of the property, the majority then leaps to the conclusion that respondent not only knew that payment of the mortgage had not been incorporated in the negotiations, but also had the duty to notify the nephew of the mortgage. This conclusion cannot be clearly and convincingly drawn from the evidence in the record.
On the day of (or the day before) the sale, respondent was asked simply to serve as notary. The nephew's New Orleans attorney prepared the sale document. The nephew came to the sale in Abbeville with the document prepared by his lawyer and delivered the document to respondent in order for respondent to notarize the signatures. The nephew had possession of the document at all times before and after the sale, and recorded it after the sale.
The mortgage was of record, available to the nephew or his attorney who normally would check the records or order mortgage certificates before purchasing property. Neither the nephew nor his attorney for the sale asked respondent to check the mortgage records or order mortgage certificates. In fact, neither contacted respondent until the eleventh hour before the sale and then only to notarize the signatures. Respondent at that late hour could not have ordered mortgage certificates before the sale.
As far as this record shows, respondent had no reason to question whether or not payment of the mortgage had been included in the negotiations, in which respondent absolutely took no part.[1] The nephew, for all *1207 respondent knew, could have had the mortgage certificate in his pocket at the act of sale. Respondent had no reason to doubt that the nephew or his attorney ordered mortgage certificates and recorded them with the notarized act of sale, or to suspect that Mrs. Wood was contemplating any fraudulent concealment of the recorded mortgage.
Hence, Disciplinary Counsel failed to prove by clear and convincing evidence that respondent knew of the fraud perpetrated by his client or that respondent aided and abetted his client in the fraud.
NOTES
[1] This Court is of the opinion that this matter does not warrant investigation or action by the Judiciary Commission.
[1] Respondent knew that Mrs. Woods did not want her nephew to know about the recently obtained mortgage loan on the property when they began negotiations, but reasonably believed she did not want her nephew to know the extent of her financial difficulties while she was negotiating the sales price with him. It is easy to understand why a person negotiating a sale would not want the other party to the negotiations to know of the seller's dire need for money.