*838 ATTORNEY DISCIPLINARY PROCEEDINGS
| iPER CURIAM.*
This attorney disciplinary proceeding arises from one count of formal charges instituted by the Office of Disciplinary Counsel (“ODC”) against respondent, Thomas Wahlder, an attorney licensed to practice law in the State of Louisiana. The charges allege violations of the Rules of Professional Conduct, specifically, Rules 4.1(a) (knowingly making a false statement of material fact or law to a third person), 8.4(a) (violating the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving fraud, deceit, dishonesty or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
UNDERLYING FACTS
In 1996, Charles Hathorn retained respondent to represent him in claim against Farm Bureau Insurance Company (“Farm Bureau”) arising from an automobile accident. Although Mr. Hathorn was married at the time, his wife was not a party to the litigation, nor was she represented by respondent.
Subsequently, respondent negotiated a settlement with Farm Bureau in Mr. Hathom’s favor without the necessity of filing suit. The settlement checks were made payable to Mr. and Mrs. Hathorn and the respondent. In addition to Mr. Hathorn’s claims, the settlement documents encompassed a loss of consortium claim for Mrs. Hathorn, a claim which respondent had not pursued.
Mr. Hathorn, without his wife, appeared at respondent’s office to execute the settlement documents and settlement drafts. At that time, Mr. Hathorn affixed both his signature and the signature of his wife to the document, informing respondent that his wife had given him | gpermission to sign her name to the documents. Respondent “witnessed” the signature of Mrs. Hathorn, as affixed by Mr. Hathorn, and directed one of his employees to notarize the signatures as if Mrs. Hathorn had in fact appeared. Thereafter, the settlement drafts were negotiated, and respondent issued a check from his trust account for the net proceeds of the settlement in the amount of $68,489.07 in favor of Mr. and Mrs. Hat-horn.
In early 1997, Mrs. Hathorn filed a petition for divorce against Mr. Hathorn, also seeking alimony and custody of the couple’s minor child. Mr. Hathorn again retained respondent to represent him. During a pre-hearing conference, counsel for Mrs. Hathorn requested to see the settlement documents, alleging they were pertinent to the issue of alimony and child support should Mrs. Hat-horn be awarded custody. Respondent declined to turn over the documents, claiming the accident file was closed and in storage at a location away from his office. He argued the file itself was irrelevant since Mr. Hat-horn would personally and truthfully testify regarding the net amount received in the settlement.
Mrs. Hathorn subsequently subpoenaed the settlement documents. At this point, the trial judge in the domestic matter apparently learned Mr. Hathorn had signed the settlement documents on Mrs. Hathorn’s behalf, without her knowledge and in the presence of the respondent. Based on these facts, the trial judge filed a complaint with the ODC.[1]
DISCIPLINARY PROCEEDINGS
After conducting an investigation, the ODC instituted formal charges against respondent. Respondent filed an answer admitting to charges, except insofar as he denied any dishonesty, fraud, deceit or misrepresentation on his part. Respondent asserted that his “lapse of judgment” in permitting his client to sign his former wife’s name was *839 wrong but was not done with any intent to defraud any person.[2]
| «¡Thereafter, a formal hearing was conducted. Respondent appeared at the hearing and was represented by counsel.

Hearing Committee Recommendation

The hearing committee concluded respondent violated Rules of Professional Conduct 4.1(a)[3] and 8.4(a)[4] since he improperly acted as a “witness” to the signature of Mrs. Hat-horn and failed to inform the trial judge and the opposing counsel in the domestic proceeding of this fact. It determined the respondent’s reluctance to disclose the settlement documents during the pre-trial hearing indicated his conduct was knowing, since he feared that his misconduct would be exposed. Thus, it concluded the respondent engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d),[5] but that his conduct did not rise to the level of dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.4(c).[6]
Relying on the ABA Standards for Imposing Lawyer Sanctions, it determined the baseline sanction was suspension.[7] The only aggravating factor found by the committee was one | instance of prior discipline.[8] However, it recognized the presence of several mitigating factors.[9]
Considering all these factors, the committee recommended that the respondent be suspended from practice for a period of six months, all deferred, subject to the completion of a one year supervised probation with conditions.[10]

*840
Disciplinary Board Recommendation

The disciplinary board issued its recommendation concurring in the findings of the hearing committee that respondent violated the professional rules as charged, except as to Rule 8.4(c), since his conduct did not rise to the level of dishonesty, fraud, deceit, or misrepresentation. |sRelying on recent jurisprudence,[11] the disciplinary board concluded the hearing committee’s proposed sanction was within the range of sanctions imposed in similar cases and appropriate under the circumstances.
Accordingly, the board recommended respondent be suspended for a period of six months, totally deferred, with a one year probationary period subject to the articulated conditions. However, at the request of respondent, it clarified probationary condition # 4 relating to indemnification.[12]
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
The record supports the findings of fact made by the hearing committee and disciplinary board that respondent committed professional misconduct by permitting his client to place the signature of Mrs. Hat-horn on settlement documents and witnessing that signature when he knew she did not personally sign these documents. Respondent then knowingly attempted to prevent Mrs. Hathorn and the court from discovering his actions by refusing to produce the documents when requested. Nonetheless, there are significant mitigating factors in this case, including respondent’s.lack of any selfish or dishonest motive, and his timely good faith efforts to rectify the consequences of his misconduct.
Considering all these factors, we find the sanction recommended by the disciplinary board is consistent with the prior jurisprudence of this court and appropriate under the circumstances, in all respects except for probationary condition number two, which we hereby delete.[13] In all other 16respects, the disciplinary board’s recommendation will be adopted.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is the decision of the court that respondent, Thomas Wahlder, be suspended from the practice of law for a period of six months. This suspension shall be totally deferred, with the provision that respondent be placed on probation for a period of one year subject to all conditions recommended by the disciplinary board, with the exception of condition number two, which is deleted. All costs in this matter are assessed against respondent, with legal interest to commence thirty days from the date of the finality of this court’s judgment until paid.
*841 LEMMON, VICTORY and TRAYLOR, JJ., dissent and would impose a harsher penalty.

Johnson, J. not on panel. Rule IV, Part II, § 3.

. Upon learning of the complaint, respondent withdrew from further representation of Mr. Hathorn. The domestic litigation continues between the Hathorns regarding the value of the loss of consortium claim. Moreover, Mrs. Hat-horn has instituted a suit against Farm Bureau for her loss of consortium claim, which Farm Bureau is defending.

. In support, he noted that Mr. Hathorn did truthfully testify at the domestic hearing as to the amount of the net settlement. Further, respondent noted that the interest from the certificate of deposit representing the majority of the net portion of the settlement was disclosed to Mrs. Hat-horn’s attorney and to the court by a list of income and expenses prepared by Mr. Hathorn in advance of trial. The trial judge even acknowledged in his Reasons for Judgment Mr. Hathom’s receipt of the net proceeds of the settlement and his testimony that there was still $40,000 of the settlement in a certificate of deposit. Respondent claimed that although Mrs. Hathorn denied any knowledge of the existence of the settlement, Mr. Hathorn testified otherwise.

. Rule 4.1 (a) provides:
In the course of representing a client a lawyer shall not knowingly:
(a) Make a false statement of material fact or law to a third person....

. Rule 8.4(a) provides:
It is professional misconduct for a lawyer to: (a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another....

. Rule 8.4(d) provides:
It is professional misconduct for a lawyer to: (d) Engage in conduct that is prejudicial to the administration of justice....

. Rule 8.4(c) provides:
It is professional misconduct for a lawyer to: (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

. ABA Standard 6.12 provides:
Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

. ' Respondent received a private admonition in 1993. The record does not indicate the basis for this admonition; however, the committee noted that “due to the circumstances underlying the admonition” it would not accord it much weight as an aggravating factor.

. The committee noted the following factors in mitigation: lack of selfish or dishonest motive; full and free disclosure to the committee and complete cooperation with the ODC; good character, as demonstrated by the letters submitted by respondent’s opposing counsel, which reflect a reputation of fair dealing in the legal community; remorse; and a timely good faith effort to rectify consequences of his misconduct.

. The committee recommended the following probationary conditions:
1. Respondent shall annually attend three hours of Continuing Legal Education in the area of small office practice/loss prevention, such as the "Malpractice Prevention Seminar" presented by the Louisiana State Bar Association's Office of Loss Prevention, or its equivalent;
2. Respondent shall require his office staff to attend a workshop on efficient office practices, such as the Staff Workshop presented by the Louisiana State Bar Association’s Office of Loss Prevention, or its equivalent;
*840 3. Respondent shall perform 100 hours of legal services for the Central Louisiana Pro Bono Project in Alexandria, Louisiana;
4. Respondent shall provide proof to the ODC of indemnity to Farm Bureau or anyone else entitled to indemnification for the loss of consortium claim being asserted by Mrs. Hathorn;
5. Respondent shall fully comply with all mandatory continuing legal education requirements, pay all Bar dues, file an annual registration statement, and pay his yearly disciplinary assessment; and
6. Respondent shall fully comply with the Rules of Professional Conduct and cooperate promptly and fully with requests for information by the ODC during the probationary period.

. In re: Sellers, 95-2764 (La.3/15/96); 669 So.2d 1204 (reprimand imposed); In re Hensley, 96-0425 (La.9/13/96); 679 So.2d 384 (six month suspension imposed); and In re Patrick, 95-1621 (La.9/15/95); 660 So.2d 433 (three month deferred suspension with conditions imposed).

. The disciplinary board modified probationary condition number four to read as follows:
4. Respondent must provide proof to the ODC of satisfaction of the indemnity obligation to Farm Bureau within thirty days of final resolution of this matter by way of judgment or settlement, whichever occurs first.

. Under condition number two, the board ordered respondent to require his office staff to attend a workshop on efficient office management. In In re Jones, 98-0971 (La. 11/6/98), 721 So.2d 850, we expressed some concern over whether the board has authority over non-lawyers, such as respondent’s office staff. In any event, since respondent ultimately has responsibility for the actions of his staff under Rule 5.3 of the Rules of Professional Conduct, this condition is unnecessary.