851 So.2d 1029 (2003)
In re Ivan David WARNER, III.
No. 2003-B-0486.
Supreme Court of Louisiana.
June 27, 2003.
Rehearing Denied September 5, 2003.
*1030 Charles B. Plattsmier, G. Fred Ours, Baton Rouge, Counsel for Applicant.
Ivan D. Warner, III, Bernard J. Bagert, Jr., New Orleans, Counsel for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from one count of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Ivan David Warner, III, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
Respondent represented Milton Victor in a personal injury claim stemming from a December 1996 automobile accident. On September 19, 1997, while the claim was still pending, Mr. Victor died of natural causes unrelated to his accident. Respondent was thereafter contacted by Mr. Victor's daughter, Barbara Pierre, about settling the claim. On November 20, 1997, without having informed the defendant insurance company of Mr. Victor's death, respondent settled the personal injury claim for $20,000. On December 5, 1997, respondent allowed Ms. Pierre to sign her father's name on the release documents and on the settlement check. Respondent paid the net settlement proceeds[1] to Ms. Pierre and did not determine whether Mr. Victor was survived by any children other than Ms. Pierre.[2]

DISCIPLINARY PROCEEDINGS

Formal Charges
Ms. Pierre filed a complaint against respondent with the ODC. After an investigation, the ODC filed one count of formal charges against respondent, alleging his conduct violated the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.2(c) (counseling a client to engage, or assisting a client, in conduct the lawyer knows is criminal or fraudulent), 1.4 (failure to communicate with a client), 1.7 (conflict of interest), 1.8 (prohibited transactions between a lawyer and client), 1.15 (safekeeping property of clients or third persons), 1.16(a)(1) (declining or terminating a representation that will result in a violation of the Rules of Professional Conduct or other law), 4.1 (truthfulness in statements to others), 4.4 (respect for rights of third persons), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent answered the formal charges and denied any misconduct.

Formal Hearing
At the formal hearing, the ODC introduced documentary evidence in support of the formal charges, including (1) Mr. Victor's death certificate, (2) various correspondence between respondent and the insurance *1031 adjuster, all dated in November 1997, relating to the settlement of Mr. Victor's personal injury claim, and (3) copies of the release and settlement check signed by Ms. Pierre in her father's name. The ODC also called Ms. Pierre to testify in person at the hearing, as well as Dean Thompson, an investigator employed by the ODC; Dawn Collins, a paralegal formerly employed by respondent; and Brian Tormey, the claim adjuster who handled Mr. Victor's personal injury claim.
Ms. Pierre testified that when her father's personal injury case settled, respondent told her to sign her father's name on the release and on the settlement check.[3] Ms. Pierre further testified that respondent did not explain the settlement documents to her, but simply said "let's go ahead and do this [the settlement], because the people didn't know that [Mr. Victor is] dead yet." With respect to the issue of whether Mr. Victor was survived by any children other than Ms. Pierre, Ms. Pierre stated emphatically that she was the only child born of the marriage of her father and her mother. However, she also admitted that she is aware of other children who claim that Mr. Victor is their father, including one son who shares Mr. Victor's first name:
A. That's what they say. They say they got Milton, they got a whole pile of them, but they're illegal. My Daddy stayed with women and they had children, and they call you Daddy, you know.
Q. Right, but they're not born inside of a marriage?
A. (Shakes head negatively).
Q. They're not legitimate?
A. He was only married to my Mom. I'm the only one that's got his name.
Mr. Thompson testified that during the ODC's investigation of this matter, he was asked to contact respondent to determine who signed Mr. Victor's name on the release and on the settlement check. Respondent informed Mr. Thompson that Ms. Pierre signed her father's name on the documents in his presence.
Ms. Collins' signature appears on Mr. Victor's release as a witness. However, she testified that she does not recall witnessing the release, nor does she recall whether Mr. Victor appeared before her to sign the document.
Mr. Tormey testified that respondent did not inform him of Mr. Victor's death prior to the settlement of the personal injury claim, and that when he received the executed settlement documents from respondent, there was no indication in the documents that Mr. Victor had not been the person who signed them. Nevertheless, Mr. Tormey conceded that the claim would have been settled for $20,000 even if he had known of Mr. Victor's death; however, he stated that he would likely have made the settlement check payable to Mr. Victor's succession representative or to his estate.
Respondent presented various pieces of documentary evidence, including (1) a settlement statement signed by Ms. Pierre and dated December 12, 1997, (2) photocopies of the driver's licenses of Mr. Victor and Ms. Pierre, and (3) a photocopy of Ms. Pierre's birth certificate. Respondent testified in his own defense, and called three witnesses: Tulane Law School professor Cynthia Ann Samuel, retired Judge Jerome Winsberg, and Tracy Albright, respondent's daughter and a paralegal employed by his law firm.
*1032 Professor Samuel was accepted as an expert in the Louisiana Civil Code and in succession matters in particular. She explained that in her view, Mr. Victor's personal injury claim was governed after his death by the provisions of La. Civ.Code art. 2315.1, relating to survival actions.[4] The highest category of claimant under that article is the decedent's surviving spouse and/or children, who may or may not be the same as the decedent's heirs or legatees. Professor Samuel opined that as Mr. Victor's child, Ms. Pierre was the appropriate person to pursue his personal injury claim after his death, not the administrator of Mr. Victor's succession. Based on this reasoning, Professor Samuel concluded that "the right person got the money under 2315.1." On cross-examination, Professor Samuel agreed that art. 2315.1 makes no distinction between legitimate and illegitimate children; however, she clarified that an illegitimate child may have to prove his or her filiation to the decedent. She also conceded that children (whether legitimate or illegitimate) who are excluded from a personal injury settlement may continue to possess a claim against the tortfeasor. Finally, Professor Samuel agreed that upon Mr. Victor's death, it would have been the "correct" and "official way of doing it" to substitute Ms. Pierre as a party in place of her father.
Judge Winsberg, who was accepted as an expert in the field of criminal law, also agreed that respondent's handling of the settlement was "not totally savory and it's not the way to do it." However, he opined that respondent did not commit a criminal act in connection with the settlement of Mr. Victor's personal injury claim; in particular, respondent did not commit forgery.[5] Judge Winsberg explained that forgery is the false making or altering, with the intent to defraud, of any signature to or any part of a writing purporting to have legal efficacy. According to Judge *1033 Winsberg, the critical factor with respect to this case is that respondent "never had an intent to defraud anyone, and if you look at the result of what ultimately happened, he gained no unjust advantage by doing what he did."
Judge Winsberg also testified that in a legal sense, Mr. Victor's death was not a material fact in this case, further detracting "from any type of criminality" of respondent's conduct. According to Judge Winsberg, because the insurance company was going to pay the same amount of money whether Mr. Victor was alive or dead, the fact that he was dead at the time of the settlement was of no consequence. On cross-examination, it was pointed out to Judge Winsberg that at the time the settlement was consummated, respondent had no way of knowing whether, in fact, the insurance company would have settled for the same sum whether Mr. Victor was alive or dead. Judge Winsberg did not think that fact changed his opinion, however.
Ms. Albright testified that Ms. Pierre represented herself to the law firm as Mr. Victor's only child. Ms. Albright recalled that after Mr. Victor died, Ms. Pierre brought in her birth certificate, a copy of her father's death certificate, and a copy of her driver's license to verify that she was, in fact, Barbara Pierre. Furthermore, Ms. Albright testified that respondent specifically asked Mr. Victor about his children during the initial client interview, and Mr. Victor informed respondent that he had one child, Ms. Pierre.
Finally, respondent took the stand to testify on his own behalf. Respondent assumed the representation of Mr. Victor from another lawyer in July 1997. During his initial meeting with Mr. Victor, respondent learned that Ms. Pierre was Mr. Victor's only child. Ms. Pierre called respondent after her father died, and said she needed to settle his personal injury case because she had no money to bury her father. Respondent referred Ms. Pierre to Oceanside Finance Company, and he guaranteed a $1,400 loan out of the proceeds of any settlement. Respondent also asked Ms. Pierre to produce her birth certificate in order to establish that she was Mr. Victor's daughter, and he asked her whether she was Mr. Victor's only child. After satisfying himself that Ms. Pierre was the only person entitled to receive the proceeds of Mr. Victor's settlement, respondent settled the claim. Respondent admitted that he did not inform the insurance adjuster handling the matter that Mr. Victor had died, but testified that he told Ms. Pierre "it's time to settle the case" so that she would not incur additional expenses, including additional attorney's fees, court costs, and increased finance charges on the money Ms. Pierre had borrowed from the finance company. Respondent further testified that he did not "enlarge" the claim beyond what it was worthi.e., ten months of pain and suffering related to Mr. Victor's soft tissue injury, valued at approximately $2,000 per month, for a total of $20,000.
On cross-examination, respondent stated that he thought it unnecessary to inform the insurance company of Mr. Victor's death because he only settled the case "for the time period that he was alive." However, respondent admitted the one-year prescriptive period was about to run on the claim, and had he mentioned his client's death, the insurance company might have required "all kinds of things" that "didn't matter," like an affidavit "that there's no illegitimate children." Therefore, in order to avoid having to file a lawsuit, or open Mr. Victor's succession (which he testified would have been "the long way"), respondent "took a short way of doing it" and simply settled the claim without telling the insurance company Mr. Victor had died. Respondent claimed to *1034 have had no fraudulent intent in doing so because the insurer "paid exactly what the file was worth, and it went to the right person." Therefore, when he received the settlement check and release in Mr. Victor's name, respondent told Ms. Pierre, "If you want to sign your father's name, I think it's okay to do so under these circumstances."

Hearing Committee Recommendation
After reviewing the evidence presented at the hearing, the hearing committee made the following factual findings:
1. Mr. Victor died prior to the settlement of his personal injury claim, and his daughter Barbara Pierre forged his name to the settlement document and to the settlement check. Respondent either directed or participated in this forgery.
2. Respondent's expert witnesses both believed that the timing of the settlement had something to do with the need to fund Mr. Victor's burial; they both made specific mention of this issue on direct examination. However, the record is clear that Mr. Victor had been buried in September, at least two months prior to the settlement.
3. Respondent had much to gain by settling the case at the time and in the fashion that he did. The claim was very close to prescription. Even though the insurance adjuster testified that had he known of Mr. Victor's death, the amount of the settlement would not have changed, there is no way to know if the documents necessary to settle the matter in such a way that they properly reflected that Mr. Victor had died, could have been confected within the remaining week left before the claim tolled.
4. The more time respondent was required to spend on the case, the less he would profit from any settlement. Respondent testified that one of the reasons to settle at that particular time was that his fee was increased under his contract if suit had been filed on the claim, from 1/3 to 40%. But once that was done, and the insurance company hired a lawyer to defend the claim, there was no assurance that it would settle at all, and respondent certainly knew that as well.
5. Judge Winsberg testified that there was no forgery because there was no intent to defraud nor advantage to be gained. This, however, ignores the fact of the time value of money, and the uncertainty of litigation had the settlement not occurred when it did.
6. Further, there is the still-unresolved issue of the possibility of other heirs. The evidence if there are any such heirs or not is entirely unclear. [Whether] the possibility of other heirs would have affected or delayed the insurance company's decision to settle is also unclear.
Based on these factual findings, the committee concluded that respondent violated Rule 1.2(c) by directing, counseling, or assisting Ms. Pierre in forging her father's name on the settlement documents; violated Rule 1.7 in light of the conflict of interest between respondent and Ms. Pierre as to the timing of the settlement, and in light of the potential for a conflict of interest if there had been heirs other than Ms. Pierre; violated Rule 4.1 by failing to disclose Mr. Victor's death to the insurance company; and violated Rule 8.4 by violating the Rules of Professional Conduct as discussed. The committee made no findings as to the other rule violations alleged in the formal charges.
Considering the ABA's Standards for Imposing Lawyer Sanctions, the committee determined the baseline sanction for respondent's misconduct is a suspension. *1035 In aggravation, the committee recognized respondent's prior disciplinary offenses,[6] dishonest motive, and substantial experience in the practice of law (admitted 1972). The committee did not find any mitigating factors are present. Based on this reasoning, the committee recommended that respondent be suspended from the practice of law for one year and one day.
Respondent filed an objection to the hearing committee's report and recommendation.

Disciplinary Board Recommendation
The disciplinary board found the hearing committee's findings of fact are not manifestly erroneous. Specifically, the board agreed that Ms. Pierre's actions constituted a forgery, and that respondent's participation in that conduct rose to the level of fraud. After considering the definition of forgery set forth in La. R.S. 14:72, the board found it is evident that Ms. Pierre's efforts in signing her deceased father's name on the release and on the settlement checkwritings that have legal efficacy gave the false appearance that Mr. Victor had done so. The board also found that respondent directed Ms. Pierre to commit the forgery with the specific intent to defraud the insurance company. La. Civ. Code art.1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." Respondent misrepresented to the insurance company that the signature on the settlement documents was that of Mr. Victor, and he suppressed the truth by failing to inform the insurance company that Mr. Victor had died. As a result of these actions, the board found that respondent obtained an unjust advantage in his settlement negotiations with the insurance company.
Turning to the remaining question of whether, by his actions, respondent intended to obtain such an unjust advantage, the board concluded that respondent did so. Respondent acknowledged in his testimony before the committee that the settlement might not have been as readily perfected if the insurance company had been informed of Mr. Victor's death. Additionally, respondent noted that the prescriptive date was nearing and that Ms. Pierre was reluctant to pay the costs associated with the filing of a lawsuit. The board observed that it was in this environment that respondent made the conscious decision not to inform the insurance company of Mr. Victor's death and to have Ms. Pierre sign her father's name on the settlement documents. Respondent knew these actions would expedite the settling of the personal injury claim and avoid the possibility of protracted litigation. Respondent also knew these actions would deprive the insurance company of the ability to make a fully informed decision, and afford him an unjust advantage in the settlement negotiations relating to Mr. Victor's personal injury claim. Based on this reasoning, the board found the hearing committee's factual findings are supported by the record in all aspects.
Upon its review of the record, the board concluded respondent violated Rule 1.2(c) by counseling Ms. Pierre to sign her deceased father's name to the settlement documents. It found respondent's motive for doing so was to avoid protracted litigation which could impact his fee, creating a *1036 conflict of interest between respondent and his client for purposes of Rule 1.7. The board also recognized a violation of Rule 4.1 based on respondent's failure to disclose Mr. Victor's death to the insurance company and his misrepresentation that Mr. Victor signed the settlement documents. Finally, the board concluded respondent violated Rule 8.4 by engaging in conduct involving dishonesty, fraud, or misrepresentation. The board determined the remaining charges were not proven by clear and convincing evidence.
The board found that respondent knowingly and intentionally violated duties owed to his client, the public, the legal system, and the profession. The board noted Ms. Pierre was harmed by respondent's counseling her to commit an act with possible criminal consequences and by his failure to put aside his own interests in avoiding protracted litigation. The public and the legal profession were harmed by respondent's failure to maintain personal honesty and integrity. Such violations tend to lessen public confidence in the legal profession and to encourage disrespect for the law. Finally, the legal system was harmed by respondent's fraudulent actions directed at circumventing the normal legal process. Respondent withheld material information from the insurer during the settlement negotiations relating to Mr. Victor's personal injury claim. As a result, the insurer was denied the opportunity to make an independent evaluation of the impact of Mr. Victor's death upon the pending claim.
The board adopted the aggravating factors cited by the hearing committee, and agreed that the record does not support the presence of any mitigating factors. Considering the ABA's Standards for Imposing Lawyer Sanctions and the prior jurisprudence of this court dealing with similar misconduct,[7] the board found the suspension recommended by the hearing committee is appropriate. Accordingly, the board recommended respondent be suspended from the practice of law for one year and one day. The board further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
Respondent filed an objection in this court to the disciplinary board's recommendation.[8] Accordingly, the case was *1037 docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992).
While the ODC has charged various professional violations, the crux of this matter is whether respondent acted with fraudulent intent when he directed, counseled, or assisted Ms. Pierre in signing her deceased father's name on the release and on the settlement check. Respondent maintains no forgery occurred because he had no intent to defraud when he directed or assisted Ms. Pierre in signing her father's name on the settlement documents. However, the hearing committee, which had the advantage of seeing and hearing the witnesses, made a finding of fact that respondent's primary motive in directing or assisting Ms. Pierre in signing Mr. Victor's name on the documents was to avoid jeopardizing the settlement of the personal injury claim, which could have adversely affected respondent's fee.
Although this court is the trier of fact in bar disciplinary cases, we are not prepared to disregard the credibility evaluations made by those committee members who were present during respondent's testimony and who act as the eyes and ears of this court. In re: Gaines, 02-2454 (La.2/25/03), 838 So.2d 1278; In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548. Therefore, we cannot say the hearing committee was clearly wrong when it determined that respondent's actions were motivated by an intent to defraud. This finding in turn supports the legal conclusion that respondent violated Rules 1.2(c) (counseling a client to engage, or assisting a client, in conduct the lawyer knows is criminal or fraudulent), 1.7 (engaging in a conflict of interest), 4.1 (truthfulness in statements to others), 4.4 (respect for rights of third persons), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Having found violations of the Rules of Professional Conduct, we now turn to a determination of an appropriate sanction for this misconduct. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
*1038 Respondent maintains that because Ms. Pierre was Mr. Victor's sole legitimate heir, his misconduct is not serious and no significant harm resulted from his actions. We disagree. Respondent's conscious decision not to inform the insurance company of Mr. Victor's death deprived it of the ability to make a fully informed decision regarding the settlement of the personal injury claim. Respondent made only minimal efforts to determine whether Mr. Victor was survived by heirs other than Ms. Pierre. By not following the proper procedures (such as opening Mr. Victor's succession or obtaining an affidavit of death and heirship), respondent could have deprived potential heirs of their share of the settlement. Additionally, he exposed Ms. Pierre to the possibility of criminal prosecution for forgery.
The ODC properly characterizes respondent's actions in this case as an example of "corner-cutting," a theme which runs throughout respondent's disciplinary history. His conduct in the instant matter is particularly troubling, because respondent admitted he knew his actions were improper, but that he "took a short way of doing it." Such behavior by a member of the bar of this state is simply unacceptable. The citizens of Louisiana look to attorneys for accurate and competent legal advice. By giving Ms. Pierre advice he knew was improper, respondent's conduct fell far below the professional standards this court expects and requires from an experienced attorney such as respondent. The baseline sanction for respondent's misconduct is a suspension from the practice of law.
In aggravation, we place strong emphasis on respondent's prior disciplinary record for similar misconduct. We also recognize his dishonest motive and substantial experience of over thirty years in the legal profession.[9] We are unable to discern any mitigating factors from the record.
Considering these circumstances, we conclude the appropriate sanction for respondent's misconduct is a suspension from the practice of law for a period of one year and one day, which will necessitate an application for reinstatement.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Ivan David Warner, III, Louisiana Bar Roll number 13247, be suspended from the practice of law in Louisiana for a period of one year and one day. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Attorney's fees, costs, client advances, and the decedent's funeral expenses were deducted from the gross settlement to arrive at a net settlement of $3,277.23.
[2] In fact, though Ms. Pierre was Mr. Victor's only legitimate child, Mr. Victor may have been survived by at least one illegitimate child.
[3] Ms. Pierre testified that no witnesses were present for the signing, although we note that the signatures of two witnesses appear on the release, as does respondent's.
[4] La. Civ.Code art. 2315.1 provides in pertinent part as follows:

A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
(4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.
B. In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the offense or quasi offense, may be urged by the deceased's succession representative in the absence of any class of beneficiary set out in Paragraph A.
C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
[5] The crime of forgery is defined by La. R.S. 14:72, which provides in pertinent part as follows:

A. It shall be unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy.
* * *
C. For purposes of this Section:
(1) "Forge" means the following:
(a) To alter, make, complete, execute, or authenticate any writing so that it purports:
(i) To be the act of another who did not authorize that act;
(ii) To have been executed at a time or place or in a numbered sequence other than was in fact the case; or
(iii) To be a copy of an original when no such original existed.
[6] Respondent's prior misconduct is strikingly similar to that at issue in the instant case. He was admonished by the disciplinary board in 1996 (96-ADB-045) for depositing settlement checks without obtaining all of the necessary endorsements. He has also been publicly reprimanded by this court for his participation in a real estate scheme. Louisiana State Bar Ass'n v. Warner, 576 So.2d 14 (La. 1991).
[7] The board considered In re: Wahlder, 98-2742 (La. 1/15/99), 728 So.2d 837, and In re: Stephens, 94-1924 (La. 11/18/94), 645 So.2d 1133. In Wahlder, this court imposed a fully deferred six-month suspension, subject to a one-year period of supervised probation with conditions, upon an attorney who directed an employee to notarize the signature of a client's wife, despite her absence at the time the documents were notarized. Wahlder also improperly acted as a "witness" to the signature of the wife. Additionally, he failed to notify the trial court and opposing counsel of this discrepancy when the couple subsequently divorced and he discovered that the husband had signed the documents on his wife's behalf without her knowledge. In Stephens, this court imposed an eighteen-month suspension upon an attorney who notarized a forged affidavit before filing it into the court record. The board noted that more rule violations and aggravating factors are present here than in Wahlder; however, respondent's misconduct here does not rise to the level of that seen in Stephens, which involved several additional rule violations and the submission of false evidence to a tribunal.
[8] Pretermitting the merits, respondent also raised a procedural objection to the disciplinary board's recommendation. He argued that Wanda Davis, a member of the board, should not have participated in the board's decision, because prior to her appointment to the board she served as the chair of the hearing committee which heard this matter. We agree Ms. Davis should have refrained from taking part in the board's consideration of this matter. However, any error in this regard is harmless. The remaining seven members of the board constitute a quorum under Supreme Court Rule XIX, § 2(D), and those seven members unanimously concurred in the recommendation. Accordingly, the disciplinary board's recommendation remains the same even after Ms. Davis' vote is discounted.
[9] In addition, the record supports a finding that respondent engaged in deceptive practices during the ODC's investigation of Ms. Pierre's complaint. Specifically, respondent altered a copy of the release signed by Ms. Pierre in her father's name by placing the initials "BP" on the release in such a way as to suggest that Ms. Pierre had indicated she were signing for her father. This conduct was properly considered in aggravation of the underlying misconduct. See Standard 9.22(f) of the ABA's Standards for Imposing Lawyer Sanctions.