|,ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Mitchell Reid Landry, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
The underlying facts are largely undisputed. Respondent was admitted to the Louisiana bar in April 1996. In March 1997, respondent accepted a position as a title attorney with Authentic Title, Ltd.
In July 1997, respondent acted as the closing attorney for a transaction involving Walter Wallendorf (“Walter”), who wished to refinance his home. Because Walter’s wife, Patsy Wallendorf (“Patsy”), had died several months earlier, respondent determined that it was necessary to open a succession to complete the refinancing. Walter informed respondent that he and Patsy had no children and no property other than the home and its furnishings. Walter also told respondent that “there was'no will” when Patsy died. When respondent asked Walter for the names of witnesses who could verify these facts, Walter informed respondent that he and Patsy had not socialized much and that he could not think of any witnesses who could provide the information.
12Thereafter, respondent prepared an affidavit of death and heirship based solely on the information provided by Walter. The affidavit stated that Patsy died intestate. Walter signed the affidavit and re *696 spondent notarized it. A second affidavit was executed by-Kelly Jones and Heather St. Amant, two notarial secretaries employed by Authentic Title, repeating the information contained in Walter’s affidavit. These secretaries swore in the affidavit that they were “well acquainted” with Patsy and knew that she had died intestate. Respondent reviewed the Jones/St. Am-ant affidavit and notarized it. The affidavits were included with a petition for possession signed by respondent and filed in the matter entitled Succession of Patsy Ruth Wallendorf, No. 513-162 on the docket of the 24th Judicial District Court for the Parish of Jefferson. In August 1997, the court rendered a judgment of possession in favor of Walter.
Approximately one year later, respondent learned that Patsy had in fact died testate. In 1994, Patsy had executed a will leaving all of her assets, including the Wallendorf home, to Michael Bradford Walker and Jennifer Brooke Walker (“Michael and Jennifer”), the children of Shirley Walker (“Shirley”). Walter apparently believed that his wife had rescinded that will shortly before her death in 1997, leaving her without a will. Subsequently, Shirley retained counsel and brought an action to annul the 1997 judgmént of possession. Walter represented himself in the litigation. At the conclusion of the proceeding, the court set aside the earlier judgment of possession in Walter’s favor and appointed Shirley as the testamentary executrix of Patsy’s succession.
In July 2000, Michael and Jennifer filed a civil suit against respondent and others. During the course of the litigation, Heather St. Amant testified that neither she nor Ms. Jones knew Patsy at the time they executed the affidavit attesting that they were “well acquainted” with Patsy and knew she had died intestate. Ms. St. 1 sAmant testified that she signed the affidavit, even though she did not know Patsy, because she was told to do so. In October 2001, Michael and Jennifer settled their suit for $70,000, which sum was paid by Authentic Title.
DISCIPLINARY PROCEEDINGS
Following its investigation of a complaint filed by Shirley, the ODC filed one count of formal charges against respondent, alleging that his conduct violated Rules 8.3(a)(1) (knowingly making a false statement of fact or law to a tribunal), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Respondent answered the formal charges, admitting most of the factual allegations and admitting that he violated the cited Rules of Professional Conduct “by virtue of his submission of affidavits in which the affiants declared personal knowledge of facts that they did not know, although in good faith believed to be true.”[1]
*697 This matter then proceeded to a formal hearing on the merits, at which respondent and Shirley Walker testified. In addition, respondent offered testimony, l4both in person and by letter and affidavit, attesting to his good character and reputation.

Hearing Committee Recommendation

After considering this matter, the hearing committee made factual findings as follows:
Respondent relied upon Walter’s representations that he and Patsy had no children and had no property other than their residence and its furnishings and contents. Respondent also relied upon Walter’s representations that Patsy did not execute a will and died intestate. When respondent questioned Walter regarding witnesses who could verify these facts, Walter advised respondent that he could not think of anyone who could execute the appropriate affidavits of death and heirship. Assuming Walter’s representations were accurate, respondent prepared an affidavit of death and heirship for Walter’s signature. Respondent or another employee of Authentic Title prepared a second affidavit wherein employees of Authentic Title alleged to have personal knowledge of the facts that Walter represented to respondent. Respondent notarized the second affidavit even though he knew or should have known the employees did not have the requisite personal knowledge to execute the affidavit. When Patsy’s succession was filed with the court, Walter was recognized as the sole heir and placed in possession of all of the property in the succession. Some two years later,- Shirley brought an action to annul the judgment of possession in favor of Walter. Shirley represented to the court that Patsy had died testate and Shirley’s children were the proper heirs to the succession. An ancillary litigation was filed seeking recovery against respondent and others for the errors outlined above. That litigation was settled in October 2001, giving the injured parties $70,000 in settlement of their claim.
IsBased on these factual findings and respondent’s stipulations in his answer, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. The committee found mitigating factors to be present, namely “the relative inexperience of the respondent, the respondent’s reliance upon the statements of his client, and the lack of any motive to do harm to any party.” The committee, determined that instead of taking the time to investigaté Walter’s statements, respondent gave into pressure to expedite the refinancing process. The committee further determined that in doing so, respondent made an error which was not motivated by financial gain and was probably made because respondent believed he was expediting a matter that was both truthful and accurate. Respondent’s error caused financial loss, which has been resolved by the courts.
The committee was impressed by the character witness and character affidavits submitted-by respondent for consideration. The committee also felt that respondent’s error was “one that all people in all professions are confronted with at the beginning of their careers.”
Under these circumstances, the committee recommended that respondent be publicly reprimanded. The ODC filed an objection to the hearing committee’s recommendation.

Ruling of the Disciplinary Board

After review, the disciplinary board determined that the hearing committee’s factual findings were not manifestly erroneous. Furthermore, the board determined *698 the committee properly found that respondent had violated the Rules of Professional Conduct as alleged in the formal charges.
The board found that respondent’s conduct was negligent as to the 8.4(c) and (d) violations; however, his violation of Rule 3.3(a)(1) was knowing. It determined Rhis conduct caused harm to both Shirley’s children and Walter, because Shirley’s children were required to file a lawsuit to have the appropriate will recognized by the court, and Walter was forced to defend himself in the proceeding. It concluded the lawsuit might have been avoided had respondent investigated Patsy’s succession issues. Nevertheless, it recognized Shirley’s children received $70,000 in settlement of their malpractice claim against respondent and others.
The board determined that the baseline sanction in this matter is a public reprimand. It found no aggravating factors present. In mitigation, it noted the following: absence of a dishonest or selfish motive, timely good faith effort to make restitution or to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward.the proceedings, inexperience in the practice of law (admitted 1996), character or reputation, and remorse.
Finding that the case law supports a public reprimand for the misconduct at issue, the board ordered that respondent be publicly reprimanded.[2] It further ordered that he be assessed with all costs and expenses of these proceedings.
Three members of the disciplinary board dissented on the issue of an appropriate sanction. Relying on In re: Waklder, 98-2742 (La.1/15/99), 728 So.2d 837, the dissenting board members would recommend that respondent be suspended from the practice of law for six months, with all but thirty days deferred.[3]
|7The ODC sought review of the disciplinary board’s ruling in this court. We ordered the parties to submit briefs addressing the issue of whether the record supports the board’s report. After reviewing the briefs filed by both parties, we docketed the matter for oral argument.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convine- *699 ing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on the stipulations by respondent and other evidence in the record, we find respondent notarized and caused to be filed into a succession proceeding two affidavits that he knew or should have known contained false information. As respondent has admitted, there is clear and convincing evidence which establishes that he has violated Rules 3.3(a)(1), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
|RHaving found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
With regard to the affidavit of death and heirship executed by Walter, stating that Patsy died without leaving a will, we find respondent’s conduct was largely negligent. Although respondent probably should have undertaken a more detailed investigation to confirm the correctness of Walter’s statement that Patsy died intestate, there was nothing in the statement to indicate it was false on its face.
The same cannot be said of the affidavit executed by respondent’s office staff. It is undisputed that respondent knew his notarial secretaries were not “well acquainted” with Patsy, and that they had no personal knowledge of whether she died intestate. The only logical conclusion which can be drawn from respondent’s actions is that he knowingly and intentionally filed this false affidavit into the court records. Respondent’s actions caused actual harm to Walter and Shirley’s children. In addition, respondent’s actions caused harm to the court system, which must be able to rely on the truthfulness of representations made by counsel. The baseline sanction for respondent’s misconduct is a suspension from the practice of law. See In re: Wahlder, 98-2742 (La.1/15/99), 728 So.2d 837.
In mitigation, we accept the hearing committee’s finding that respondent did not file this affidavit with any improper motive. As the committee observed, 19respondent sincerely believed that Walter’s representation that his wife died intestate was truthful and accurate, and his actions were undertaken with the intent of expediting the refinancing of Walter’s home. We also recognize the absence of a prior disciplinary record, respondent’s full and free disclosure to the disciplinary board and cooperative attitude toward the proceedings, inexperience in the practice of law at the time of the offense, good character and reputation, and remorse. We are unable to discern any aggravating factors from the record.
Considering all the circumstances, we find the appropriate sanction in this case is a six-month suspension from the practice *700 of law. In light of the substantial mitigating factors present, and the absence of any aggravating factors, we will defer all but thirty days of the suspension, subject to the condition that any misconduct during a six-month period may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Mitchell Reid Landry, Louisiana Bar Roll number 24147, be suspended from the practice of law for a period of six months. It is further ordered that all but thirty days of the suspension shall be deferred and respondent shall be placed on unsupervised probation for six months, subject to the condition that any misconduct during this period may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
TRAYLOR, Justice, dissents and would impose greater discipline.

. More specifically, respondent provided the .following admissions:
(a) With respect to Rule 3.3(a), while [respondent] knew that his secretarial employees were not personally acquainted with the deceased or Mr. Wallendorf, he did not know nor did he believe that the underlying facts contained in the affidavits were false; rather, he believed the underlying facts to be true based upon Mr. Wallendorf's representations;
(b) With respect to Rule 8.4(c) and (d), [respondent] further responds that he did not intentionally engage in any conduct involving misrepresentation to the court on the substantive facts placed before the court in connection with this succession proceeding, but does acknowledge that those aspects of the affidavit stating that the affiants were *697 personally acquainted with the decedent were not accurate.

. The board cited In re: Hartley, 03-2828 (La.4/2/04), 869 So.2d 799 (this court dismissed formal charges filed against an attorney who instructed a fellow attorney to notarize a power of attorney that incorrectly stated the affiant and a witness executed the document in the presence of the notary); In re: Guillory, 01-DB-047 (Board Op. 11/19/02) (the board publicly reprimanded an attorney who notarized an act of exchange involving real property after some of the owners did not sign the document in his presence); and In re: Deshotel, 97-DB-063 (Board Op. 4/8/99) (the board publicly reprimanded an attorney who prepared and backdated a marriage contract to a date pri- or to the signatories’ marriage even though he knew that a post-nuptial execution of a márriage contract without court authority wás null).

. In Wahlder, the attorney permitted his client to sign his wife’s name to settlement documents, then witnessed the wife’s signature as if she had appeared before the lawyer. The attorney also knowingly attempted to prevent the client's wife and the court from discovering his actions by refusing to produce the documents when requested. Nonetheless, considering the significant mitigating factors present, including a lack of a dishonest or selfish motive and respondent's timely good faith efforts to rectify the consequences of the misconduct, the court imposed a fully deferred six-month suspension with probation.